UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**KANDY SYNOWICZ,**

    **Plaintiff,**

   **v.**                                                 Case No. 20-CV-883

**KILOLO KIJAKAZI,**[1]
**Acting Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

    Kandy Synowicz seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

    Synowicz filed an application for a period of disability and disability insurance benefits on April 17, 2017. (Tr. 29.) She filed a Title XVI application for SSI on February 11, 2019. (*Id.*) Synowicz alleges disability beginning on December 22, 2015 due to depression, carpal tunnel syndrome, leg injury, bipolar disorder, and attention deficit hyperactivity disorder ("ADHD"). (Tr. 219.) Synowicz's applications were denied initially and upon

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

reconsideration. (Tr. 29.) Synowicz filed a request for a hearing and a hearing was held before an Administrative Law Judge on February 12, 2019. (Tr. 47–76.) Synowicz testified at the hearing, as did Steven Goldstein, a medical expert, and Julie Bose, a vocational expert. (Tr. 47.)

In a written decision issued April 19, 2019, the ALJ found that Synowicz had the severe impairments of history of a compound fracture of the right lower extremity with open reduction and internal fixation with hardware; degenerative joint disease of the right knee, status post arthroscopy; reflex sympathetic dystrophy; bilateral carpal tunnel syndrome; depression; anxiety; and ADHD. (Tr. 31.) The ALJ found that Synowicz did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 32–34.) The ALJ further found that Synowicz had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: limited to lifting up to 10 pounds occasionally and 5 pounds frequently; stand or walk for approximately 2 hours per 8 hour workday; sit for approximately 8 hours per 8 hour workday, with normal breaks; never kneel, crawl, or climb ladders, ropes, or scaffolds; occasionally balance, stoop, crouch, and climb ramps or stairs; frequent reaching, handling of objects defined as gross manipulation, and fingering defined as fine manipulation of items; limited to jobs which can be performed while using a hand held assistive device required at all times when walking; avoid concentrated exposure to dangerous machinery; avoid all exposure to unprotected heights; and limited to simple and routine tasks in work at a flexible pace; involving only end of the day production requirements, with no hourly or other periodic production quotas; and only occasional interaction with the public in the work setting. (Tr. 34.)

While the ALJ found that Synowicz was unable to perform her past relevant work as a certified nurse assistant, he determined that given her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Synowicz could perform. (Tr. 38–39.) As such, the ALJ found that Synowicz was not disabled from December 22, 2015 through the date of the decision. (Tr. 39.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Synowicz's request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*,

152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to This Case*

Synowicz argues the ALJ erred by failing to find her bipolar disorder to be a severe impairment at step two of the five-step sequential evaluation for determining whether an individual is disabled. She argues that this error, then, infected the ALJ's consideration of Synowicz's RFC. (Pl.'s Br., Docket # 13.)

At step two, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. § 404.1521.[2] An impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques; thus, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. *Id.* A plaintiff's statement of symptoms, a diagnosis, or a medical opinion alone will not establish the existence of an impairment. *Id.*

In this case, it is unclear whether the ALJ even considered Synowicz's bipolar disorder to be a medically determinable impairment. This was error. Synowicz alleged disability due to bipolar disorder, among other physical and mental impairments. (Tr. 219.) The ALJ questioned Synowicz at the administrative hearing regarding her mood swings (Tr. 68) and both State Agency physicians at the initial and reconsideration levels found Synowicz's bipolar disorder to be a medically determinable impairment (Tr. 82, 102). Thus, the ALJ was

---

[2] As the regulations governing the evaluation of disability for disability insurance benefits and SSI are nearly identical, I will generally refer to the regulations for disability insurance benefits found at 20 C.F.R. § 404.1520, *et seq.* for ease of reference.

aware that Synowicz's bipolar disorder was at issue. Furthermore, the record indicates that Synowicz was diagnosed with bipolar disorder (Tr. 668) and treated with psychologist Dr. David Byrne for her mental health conditions, including depression, anxiety, bipolar disorder, and ADHD from July 2016 through January 2019. (Tr. Ex. 7F, 28F.) Synowicz also treated with Teresa Grimes, PA-C, for over 15 years, for both therapy and medication management of her mental health issues, including bipolar disorder. (Tr. 918.) Given the record evidence, it is unclear why the ALJ did not consider whether Synowicz's bipolar disorder was a medically determinable impairment. This error is significant because only limitations and restrictions attributable to medically determinable impairments must be considered in assessing the RFC. SSR 98–6p. Given the record evidence, Synowicz's bipolar disorder is undoubtedly a medically determinable impairment. Because the ALJ did not consider whether Synowicz's bipolar disorder was even a medically determinable impairment, it is unclear whether he accounted for it in assessing the RFC.

After a medically determinable impairment is established, the ALJ then determines whether the impairment is severe. 20 C.F.R. § 404.1521. The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). The ALJ's step two determination is "a *de minimis* screening for groundless claims." *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) (internal quotation and citation omitted). An impairment is only "not severe" if it is "a slight abnormality" that has "no more than a minimal effect on the ability to do basic work activities." *Id.* (internal quotation and citation omitted). Thus, only "claims based on the most trivial impairments" should be rejected as non-severe. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Given this low threshold, Synowicz's bipolar

5

disorder is clearly a severe impairment. Thus, the ALJ erred at step two by failing to consider whether Synowicz's bipolar disorder was a medically determinable, severe impairment.

All medically determinable impairments—whether severe or not—must be considered in the ALJ's RFC determination. SSR 98–6p. For this reason, any step two error can be deemed harmless if the ALJ accounted for mental limitations in setting the RFC. *See Masch v. Barnhart*, 406 F.Supp.2d 1038, 1054 (E.D. Wis. 2005). The Commissioner justifies the ALJ's failure to address Synowicz's bipolar disorder by arguing that although the ALJ never mentioned it by name, he considered the symptoms related to the condition when he accounted for her depression, anxiety, and ADHD in the RFC. (Def.'s Br. at 7, Docket # 16.) The Commissioner argues that Dr. Byrne and PA Grimes treated Synowicz for all of her mental health impairments, and that there was no indication that her bipolar disorder, solely and apart from her other impairments, caused the limitations in their opinions. (*Id.* at 9.)

This argument falls short. The Commissioner incorrectly conflates bipolar disorder with depression. Bipolar disorder is neither depression, anxiety, nor ADHD, even if certain symptoms overlap. As the Seventh Circuit explained:

> A person suffering from [bipolar] disorder has violent mood swings, the extremes of which are mania—a state of high excitement in which he loses contact with reality and exhibits bizarre behavior—and clinical depression, in which he has great difficulty sleeping or concentrating, has suicidal thoughts and may actually attempt suicide. The condition, which varies in its severity, is treatable by antipsychotic drugs and other medications. But many patients do not respond well to treatment, or have frequent relapses. "For many patients, the prognosis of bipolar disorder is not good, as the disorder is associated with frequent relapses and recurrences."

*Bauer v. Astrue*, 532 F.3d 606, 607 (7th Cir. 2008) (internal citations omitted). Because bipolar disorder includes depressive episodes, it can be easily confused with depression. Hurley, Katie, LCSW, "Bipolar Disorder and Depression: Understanding the Difference," PsyCom,

6

available at https://www.psycom.net/depression.central.bipolar.depression.html (last visited Aug. 12, 2021). The main difference between bipolar disorder and depression is that bipolar disorder also includes symptoms of mania, whereas depression does not. *Id.* Synowicz's records reflect evidence of mood cycling, as well as depression and anxiety. (Tr. 645, 663, 672, 1422.) In fact, Dr. Byrne specifically noted that her mood cycling "shows itself in the session." (Tr. 1438.) Given the fact the ALJ did not even consider whether Synowicz's bipolar disorder was a medically determinable impairment, it is unclear whether these specific bipolar symptoms were accounted for in her RFC.

Furthermore, while the Commissioner believes that the ALJ's consideration of Synowicz's other mental health impairments encapsulates her limitations from bipolar disorder, the ALJ's treatment of these other conditions is so woefully incomplete that I lack confidence that *any* of her mental health limitations are properly accounted for in the RFC. Synowicz treated with either Dr. Byrne or PA Grimes approximately *100 times* between February 2016 and January 2019. (Tr. 629–88, 804–11, 1396–1448.) Yet, the only mental health treatment record the ALJ addresses is her hospitalization at Rogers Memorial Hospital from September 15 to September 19, 2016. (Tr. 36.) To read the ALJ's decision, Synowicz's five-day hospitalization cured her mental health impairments. (*Id.*) The record, unfortunately, tells a much different story.

Prior to her hospitalization, Synowicz clearly struggled tremendously with her mental health impairments. For example, in August 2016, she relayed to Dr. Bryne that she was having difficulty managing her "super charged" emotions. (Tr. 677.) Several days later, Synowicz call just before her scheduled appointment with Dr. Bryne and tearfully cancelled it. (Tr. 676.) Synowicz hung up on the receptionist, ignored Dr. Bryne's phone calls, and

7

texted "no" in response to a request that she call the office. (*Id.*) Synowicz later apologized for her behavior, noting that her emotional experience "comes fast and intense." (Tr. 675.) By the end of August 2016, Dr. Byrne noted that Synowicz was having "rapid mood changes" observable during her session (Tr. 674), prompting Dr. Byrne to ask Synowicz to come in twice a week for treatment (*id.*). On August 29, 2016, Dr. Byrne noted that Synowicz was experiencing two to three mood swings per day. (Tr. 672.)

During the early part of September 2016, Synowicz experienced a period of relative stability (Tr. 670–71) until September 13, 2016, when Dr. Byrne found Synowicz sitting on the back steps of his office, crying uncontrollably (Tr. 668). After physically assisting her into the office, Synowicz revealed that she had not eaten or slept for at least 24 hours. (*Id.*) It took 45 minutes of a 90 minute session to calm Synowicz down, at which time she agreed to go to urgent care. (*Id.*) Synowicz returned to Dr. Byrne's office on September 15, at which time Dr. Byrne noted that Synowicz was very emotional, severely anxious and depressed, suicidal, feeling "out of her mind," having difficulty remembering anything, and feeling as if she could not stop crying. (Tr. 666.) He stated that Synowicz was not functioning well and was constantly overwhelmed. (*Id.*) She was admitted to Rogers Memorial Hospital for inpatient treatment for the next five days. (*Id.*)

While Synowicz's stay at Rogers Memorial may have been a peak exacerbation of her bipolar disorder, her subsequent mental health treatment records upon discharge from the hospital do not paint the positive picture the ALJ portrays in his decision. (Tr. 36.) The ALJ cites, and ultimately relies, on three particular medical records to discount Synowicz's allegations of disabling symptoms and the opinions of her treating mental health providers, Dr. Byrne and PA Grimes. First, the ALJ cites to Synowicz's discharge documents from

8

Rogers Memorial Hospital that indicate, after five days of inpatient treatment, that she showed improvement. (Tr. 36, citing Ex. 1F 2/5 (Tr. 337, 340.) This record is of little weight in the overall assessment of Synowicz's condition. Clearly she would not have been discharged from the hospital without demonstrating *some* improvement and some level of stability. It does not follow, however, that her bipolar disorder stabilized to the point of non-disabling. Second, he cites to two records from Synowicz's medical providers (not her mental health treatment providers)—one from April 13, 2017 and one from June 1, 2017—in which it was noted that she was alert and oriented, pleasant and cooperative, and had appropriate affect. (Tr. 766–67, 697.) The ALJ ignores, however, in the June record, that after stating Synowicz was "pleasant, in good spirits, cooperative," and had a "normal affect," her doctor also wrote: "Other – Maniacal." (Tr. 697.) In medical parlance, "maniacal" means "relating to or characterized by mania," (Stedman's Medial Dictionary, Maniacal), with "mania," of course, being characteristic of bipolar disorder, *see* Stedman's, Bipolar Disorder ("an affective disorder characterized by the occurrence of alternating manic, hypomanic, or mixed episodes and with major depressive episodes.").

He also cites Dr. Byrne's Mental RFC Questionnaire, in which he noted that Synowicz was making positive progress, to discount Synowicz's disabling symptoms. (Tr. 36, citing Ex. 6F/1 (Tr. 623).) In reality, the ALJ lifts the statement "making position progress" from the following complete sentence: "making slow, but positive progress with periodic setbacks." (Tr. 623.) Dr. Byrne also stated, on the very same page, that Synowicz's symptoms "can be highly disruptive to her ability to work, function on a nearly daily basis." (*Id.*) The ALJ conveniently omitted this part of the opinion, despite the opinion's supportability in the treatment notes, including Dr. Byrne's observations of mood cycling during treatment

9

sessions (Tr. 674, 1438), as well as finding himself becoming distracted because of her behaviors (Tr. 811, 1417). The ALJ's citation to these records in support of his finding of non-disability demonstrates cherry-picking at its worst. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Furthermore, the ALJ ignores large swaths of the record detailing Synowicz's mental health conditions after her hospitalization. During the remainder of the relevant time period, Synowicz did experience periods of improvement and relative stability. (*See, e.g.*, Tr. 632–33, 639–40, 643–46, 650–58, 804–05, 808–09, 1403–04, 1410, 1413–16, 1420–21.) However, as is typical with bipolar disorder, her periods of relative stability were punctuated with periods of exacerbation of symptoms, including insomnia, mood swings, and difficulty concentrating. (*See, e.g.*, Tr. 631, 634–35, 637, 641–42, 806–07, 810, 1400–02, 1405–07, 1409, 1411, 1417–19, 1422, 1438, 1440, 1447.) Given the sparse consideration of Synowicz's ample mental health treatment records, I cannot follow the ALJ's reasoning as to how he crafted the RFC to properly account for her mental health impairments. This was error. For these reasons, the case will be remanded for the ALJ to reconsider Synowicz's mental health impairments, including her bipolar disorder.

## CONCLUSION

Although the record indicates Synowicz was diagnosed with bipolar disorder, treated for bipolar disorder, and suffered symptoms related to bipolar disorder, the ALJ failed to consider whether bipolar disorder was a medically determinable impairment. Furthermore, the ALJ insufficiently considered her other mental impairments of depression, anxiety, and

ADHD and failed to create a logical bridge between his findings regarding these conditions and the RFC limitations. Thus, remand is required.

While Synowicz requests that this Court award her benefits in lieu of remanding the case, an award of benefits is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there are unresolved issues and this is not a case where the "record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 12th day of August, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge